UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RITA R JOHNSON,

     Plaintiffs,         Case No. 17-cv-13174

v                 Honorable Thomas L. Ludington

CITY OF SAGINAW and
WATER DEPARTMENT WORKER NO. 1,

     Defendants.
_____/

## OPINION AND ORDER DENYING MOTION TO REMAND, DENYING MOTIONS TO STRIKE, DENYING MOTION TO DISMISS, AND DENYING MOTION FOR SANCTIONS

On September 22, 2017, Plaintiff Rita R. Johnson filed suit in the Saginaw County Circuit Court against Defendants City of Saginaw and Water Department Worker No. 1. Johnson contends that Defendants "arbitrarily and capriciously turned off the water supply" to her business on May 7, 2011, "without notice or authority." Compl. at 2, ECF No. 10, Ex. B.[1] Defendants removed the case to this Court several days later. ECF No. 1. On September 29, 2017, Johnson filed a motion to remand the case, arguing that it was improperly removed. ECF No. 3. In response, Defendants filed an amended notice of removal, ECF No. 4, and later filed a second amended notice of removal, ECF No. 10. On October 2, 2017, Defendants filed a motion to dismiss the suit. ECF No. 7.

Defendants attach a number of exhibits to their reply brief in support of their motion to dismiss, including the transcript of an administrative hearing held by the City and a work order

---

[1] A related case, in which Johnson alleges that the City of Saginaw and certain City employees violated her due process rights when they suspended her business license, was filed in this Court on July 25, 2017. *See Johnson v. Morales, et al*, Case No. 1:17-cv-12405.

related to the reinstatement of water services. ECF No. 12. On October 17, 2017, Johnson filed a motion to strike those exhibits. ECF Nos. 13, 14.[2] And, on October 26, 2017, Johnson filed a motion for Federal Rule of Civil Procedure 11 sanctions against Defendants. ECF No. 19. For the following reasons, the motion to remand, motion to dismiss, motion to strike, and motion for sanctions will all be denied.

## I.

Rita Johnson owns and operates Rita's Southern Soul Café in Saginaw, Michigan. Compl. at 2. She alleges that, on May 7, 2017, the City of Saginaw "arbitrarily and capriciously turned off the water supply" to her café. *Id.* Johnson was current on her payments at the time. Johnson believes that her water was turned off "in a backhanded way to shut down any use of Plaintiff's building." *Id.* At the filing of the complaint, more than four months had passed "without the restoration of water services[,] . . . any notice of any sort of hearing to challenge the discontinuation of water services[,] . . . [and] without any opportunity or ability to end the discontinuation of water services." *Id.* Johnson's counsel has made verbal demands that the City of Saginaw turn on her water services, but, as of the filing of the complaint, that had not happened.[3]

Johnson asserts two causes of action. First, she alleges that Defendants' actions have violated her substantive due process rights. She argues that Defendants "arbitrarily and/or capriciously ended Plaintiff's delivery of water without any ability or opportunity to have any process or procedure to halt the proposed depravation and/or seek its restoration." *Id.* at 3. She further alleges that "[e]nding water services when there is no on-going violations of City

---

[2] Johnson filed both a motion to strike and an amended motion to strike. Because the original motion has been superseded, it will be denied as moot.

[3] As discussed below, Defendants contend that Johnson's water services have recently been restored. That fact likely cannot be considered by the Court in adjudicating the motion to dismiss, and even if it were the *ex post facto* change in circumstances would not alter the Court's conclusion.

Ordinances or lack of payment makes the continued suspension of water services arbitrary and/or capricious, of such a character to shock the consciousness of this Court; and/or is an unreasonable restriction is [sic] without a valid rational basis." *Id.* In Count Two, Johnson alleges that her procedural due process rights have been violated. Specifically, Defendants did not provide her with notice before they ended her water services, and they did not provide a pre- (or post-) deprivation hearing.

## II.

Defendants are moving for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

## III.

Johnson challenges the removal of this case from state court. If removal was improper, then this Court lacks jurisdiction to adjudicate the case. The threshold jurisdictional issue will thus be addressed first. Because the Court declines to remand, Defendants' motion to dismiss will be

considered next. The parties strenuously dispute which documents the Court can consider in resolving that motion. In fact, that issue is the subject of Johnson's motion to strike. Accordingly, the motion to strike and motion to dismiss must be considered together. Finally, Johnson's motion for Rule 11 sanctions will be addressed.

**A.**

In her motion to remand, Johnson argues that Defendants did not strictly comply with the statutory requirements for removal. Those requirements are provided in 28 U.S.C. § 1446(a):

> A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

*Id.*

Johnson argues that Defendants did not provide a copy of all process served in the state court action because the notice of removal did not include a copy of the summons.

As Defendants argue, the defect Johnson identifies was a *de minimis* error that has since be rectified. *See* Sec. Am. Not. Removal, ECF No. 10. Courts have consistently and uniformly held that *de minimis*, non-jurisdictional defects in notices of removal do not warrant remand if they are timely cured. As explained in Federal Practice and Procedure,

> The notice must be accompanied by copies of all process, pleadings, and orders that have been served upon the defendant or defendants in the state court action. The failure to conform to these procedural rules is not a jurisdictional defect, however, and both the failure to file all the state court papers and the failure to provide the Federal Civil Rule 11 signature are curable in the federal court.

14C Charles Alan Wright and Arthur R. Miller, *Procedure for Removal—Content and Amendment of the Notice of Removal*, Fed. Prac. & Proc. Juris. § 3733 (4th ed.) (collecting cases).

Courts in the Eastern District of Michigan have unvaryingly held that *de minimis* procedural errors like a "failure to attach certain state court documents" do not necessitate "remand to state court." *Long v. Ocwen Loan Servicing*, LLC, No. 13-CV-14810, 2014 WL 1400115, at *2 (E.D. Mich. Apr. 10, 2014) (relying upon seven opinions from courts in the Eastern District of Michigan issued in the last five years which all reach the same conclusion). Johnson has not cited a single case where a suit was remanded based on the type of procedural error alleged here, much less one where remand occurred after the error had been cured. Every case cited in § 3733 of *Federal Practice and Procedure* and *Long* stands for the opposite proposition: *de minimis* procedural defects are curable and do not warrant remand. Courts have reached that conclusion almost without exception.[4] *See also Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 164 (6th Cir. 1993) (abrogated on other grounds) (holding that technically deficient notices of removal can be cured by subsequent filings).

Johnson argues that Defendants' notice of removal deprives her of her preferred forum. But "the defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice." *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 927 (4th Cir. 1992). And "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Johnson does not dispute that this Court possesses subject matter jurisdiction over her claims. As such, and because the technical defects in the notice of removal have been cured, the Court has a duty to adjudicate this case. The motion to remand will be denied.

**B.**

---

[4] *See Gilfert v. Liberty Mut. Ins. Co.*, No. CIV.A. 305CV527S, 2006 WL 288628, at *2 (W.D. Ky. Feb. 2, 2006) (noting that one district judge has issued two opinions rigidly applying the procedural requirements of § 1446(a), but concluding that the "decisions appear to stand alone in modern jurisprudence") (citing *Burnett v. Birmingham Board of Education*, 861 F.Supp. 1036 (N.D.Ala. 1994) and *Kisor v. Collins*, 338 F.Supp.2d 1279 (N.D.Ala. 2004)).

Defendants argue that Johnson's substantive due process and procedural due process claims are both deficient as a matter of law. In support of that argument, Defendants attach three exhibits to their reply brief, ECF No. 12. The first is a transcript of a "show-cause" hearing held on May 11, 2017, by Dennis Jordan, the Director of Human Resources for the City of Saginaw. Hearing Tr., ECF No. 12, Ex. 1. The second exhibit is a service record involving the alleged reconnection of Johnson's water service. Service Rec., ECF No. 12, Ex. 2. The third exhibit is a portion of the City of Saginaw Code of Ordinances. In her motion to strike, Johnson argues that the first two exhibits cannot be considered by the Court while adjudicating the motion to dismiss.

The threshold question is whether the Court may look beyond the complaint in resolving the motion to dismiss. For that reason, the motion to strike will be resolved before the motion to dismiss.

### 1.

As an initial matter, Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A reply brief in support of a motion to dismiss is not a pleading. *See* Fed. R. Civ. Pro. 7(a). As such, the exhibits in question will not be stricken, even if Johnson is correct that they should not be considered in adjudicating the motion to dismiss. *See Rhea v. Dollar Tree Stores, Inc.*, 395 F. Supp. 2d 696, 702 (W.D. Tenn. 2005). The amended motion to strike will be denied on that ground.

The more important question is whether the Court may properly consider the challenged exhibits at this stage of the proceedings. A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d*). Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478,

487 (6th Cir.2009). Conversion to a motion for summary judgment, however, "'should be exercised with great caution and attention to the parties' procedural rights.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller § 1366). A court has discretion regarding whether to convert a motion to dismiss to a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

In addition to the general rule—that a document must be referred to in the complaint and central to the claim—the Sixth Circuit has permitted courts to take judicial notice of some documents of public record. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). For example, a court may take judicial notice of other court proceedings, including transcripts. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). However, taking judicial notice of documents has been limited to allow only "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases).

Indeed, judicial notice of public records should only be taken for those records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* That is, the Court "must only take judicial notice of facts which are not subject to reasonable dispute." *Id.* "When considering public documents in the context of a motion to dismiss, a court may not accept a document to decide facts that are in dispute." *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006).

Thus, the Court may take judicial notice of the transcript of the administrative hearing which occurred here. Courts have consistently held that a court may take notice of other court proceedings without converting a motion to dismiss into a motion for summary judgment. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *Buck*, 597 F.3d at 816. There is no reason to treat an administrative proceeding differently, assuming that the judicial notice is limited to recognition that the proceeding occurred. *See Winget* 537 F.3d at 576 ("'[W]e may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir.1999)). Accordingly, the transcript which Defendants have provided may be considered, in a limited manner, without converting the motion to dismiss into a motion for summary judgment.

The second exhibit in dispute, the work order, is more difficult to categorize. Defendants argue that it was "prepared and utilized by the Defendant City of Saginaw in the performance of its official functions." Def. Res. Mot. Strike at 2, ECF No. 17. And there is some support for the proposition that such a document qualifies as a public record. *See Bothuell v. Grace*, No. 16-11009, 2017 WL 892343, at *3 (E.D. Mich. Feb. 16, 2017), report and recommendation adopted No. 16-11009, 2017 WL 878026 (E.D. Mich. Mar. 6, 2017). But the governing Sixth Circuit authority is focused on permitting courts to review records whose authenticity (though not necessarily accuracy) cannot reasonably be challenged. The work order in question does not appear to be self-authenticating. In an abundance of caution, the Court will not consider the work order in adjudicating Defendants' motion to dismiss.

This is a close question, but even if the Court considered the work order, its conclusion would not change. Defendants rely upon the work order in arguing, in their reply brief, that Johnson's suit is moot because her water service has been restored. To begin with, this argument was raised for the first time in a reply brief. Generally speaking, such attempts to raise a new argument will be disregarded. *See Lundsted v. JRV Holdings*, LLC, No. 14-CV-13981, 2016 WL 1665154, at *7 (E.D. Mich. Apr. 27, 2016) ("Nor may a party raise an argument for the first time in a reply brief."). More importantly, Johnson is seeking nominal, compensatory, and punitive damages in her suit, not just declaratory and injunctive relief. Thus, only part of the relief sought has been voluntarily provided by Defendants. Additionally, the allegedly unconstitutional procedures which gave rise to Johnson's claim remain in place. As such, there is no guarantee that the allegedly wrongful behavior would not recur. "'[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite*, 455 U.S. 283, 289 (1982)). Even if considered, the work order would not impact the Court's analysis of the motion to dismiss.

**2.**

Defendants argue that Johnson's procedural and substantive due process claims should both be dismissed. In challenging her substantive due process claim, Defendants argue that Johnson was not deprived of a constitutionally protected property interest and that, even if she was, the City's decision to suspend water services was not arbitrary or capricious. Defendants argue that Johnson's procedural due process claim should be dismissed because she received notice that her business was to cease operations and because a hearing was held for her to contest that order. For the following reasons, Defendants' motion to dismiss will be denied.

**i.**

In her complaint, Johnson contends that Defendants' unilateral decision to end her water services was arbitrary and capricious and should shock the conscience of the Court. Those arguments frame a claim for violation of her substantive due process rights. In *Pearson v. City of Grand Blanc*, the Sixth Circuit categorized potential substantive due process claims in the administrative proceeding context. 961 F.2d 1211, 1216 (6th Cir. 1992). First, "[a]n action of state or local government which "shocks the conscience" of the federal court, may violate substantive due process." *Id.* at 1217. However, "'[a]pplying the 'shock the conscience' test in an area other than excessive force . . . is problematic.'" *Id.* (quoting *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991)). *See also Tinney v. Richland Cty.*, 678 F. App'x 362, 368 (6th Cir. 2017) ("We have resisted application of shock-the-conscience claims in cases that do not involve physical force.").

The "shock the conscience" standard is difficult to apply even under the best of circumstances. Such claims almost invariably involve conduct by government officials which either physically harms an individual, or places a person in unacceptable risk of physical harm. It is questionable whether government conduct which inflicts only financial harm on someone could ever "shock the conscience." Perhaps so. But this is not such an instance. Rather, as recognized by the Sixth Circuit in *Pearson*, the "'shocks the conscience' terminology" is "useful" in the administrative action context to "emphasize the degree of arbitrariness required to set aside [an administrative] decision by a local authority." *Pearson*, 961 F.2d at 1221. Thus, at least in the context of substantive due process challenges to local administrative action, claims that official action "shocks the conscience" have been subsumed into claims that the official action was "arbitrary and capricious."

In *Pearson*, the Sixth Circuit also outlined the elements of an "arbitrary and capricious" claim. "Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the strict sense, meaning 'that there is no rational basis for the ... [administrative] decision.'" *Id.* (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)). Essentially, "[t]he administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Id.* (quoting *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir.1975)).

> Under the foregoing principles, it is extremely rare for a federal court properly to vitiate the action of a state administrative agency as a violation of substantive due process. The vast majority of such attacks may readily be disposed of on summary judgment, as in the case at bar, thus keeping interference by federal courts with local government to a salutary minimum. Review of state administrative action is primarily a matter for the state courts, which quite properly have a much broader scope of review under state law.

*Id.* at 1222–23.

Defendants challenge Johnson's claim of arbitrary and capricious action on two grounds. First, Defendants contend that Johnson does not have a constitutionally protected property interest in the use of utilities at her place of business. It is true that, in proving a violation of substantive due process, the plaintiff must demonstrate that she "has a constitutionally protected property or liberty interest" which was infringed upon. *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005). But Defendants' assertion that access to and continuation of utility services for one's business is not a constitutionally protected property interest is entirely without merit.

"It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due

process clause." *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993). *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (finding that customers have a constitutionally protected property interest in the continuation of their residential utility services). Defendants argue that these cases are distinguishable because they involve residential utility services, not commercial utility services. But that distinction is not persuasive. "[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess." *Ramsey v. Bd. of Educ. of Whitley Cty., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988). *See also Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 164 (6th Cir. 1973) (quoting *Wood v. City of Auburn*, 87 Me. 287, 32 A. 906, 908 (1895) ("The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer, once taken on to the system, becomes dependent on that system for a prime necessity of *business*, comfort, health, and even life.") (emphasis added)). Johnson has a constitutionally protected property interest in the continuation of water services for her business.

Defendants next argue that the City's decision to discontinue water services was not arbitrary and capricious because there was a rational basis for the decision. According to the City, Johnson's water services were "shut down to protect the health and safety of the Plaintiff and citizens of Saginaw from violent activity that was taking place at or around the Plaintiff's place of business." Mot. Dismiss at 6, ECF No. 7. The "violent activity" which Defendants reference has not been identified in any of the pleadings in this matter.[5] However, Johnson concedes that her

---

[5] The activity was, however, discussed at length in the pleadings in *Johnson v. Morales, et al*, Case No. 1:17-cv-12405, which is also pending before this Court. Thus, the Court is confronted with a strange situation. Both cases arise out of the same nucleus of operative facts, but some potentially relevant factual allegations were made only in one of the complaints. The Court is free to take judicial notice of the existence of that other suit, but cannot now consider the factual allegations made in the pleadings on that docket. *See Winget* 537 F.3d at 576. The Court must thus ignore factual allegations which it has properly considered in related litigation simply because they are not also alleged in the present complaint.

business license was suspended by the City. *See* Resp. Mot. Dismiss at 7 n.2, ECF No. 8 ("As discussed herein, the City argues that it can turn off water delivery because it terminated or suspended Plaintiff's business license. Even assuming that at face value, the water delivery was turned off on May 7, 2017. See ECF No. 1-1 ¶8. The license was not suspended until May 8, 2017. On the date of suspension of water delivery, Plaintiff had a full and proper business license and thus no right existed to shut off water on the basis of lack of license.") (emphasis in original).

For several reasons, Johnson has adequately alleged circumstances which, if true, could support a claim that the City acted arbitrarily and capriciously. Defendants argue that they discontinued water services pursuant to City of Saginaw Code of Ordinances § 110.06(F). That section is titled "Suspension, Revocation, Denial of Renewal of License." *Id.* at § 110.06. Section 110.06(F) (subtitled "Immediate Suspension"), provides that "[w]here the City Manager or their designee shall determine that in the interest of the public health, morals, safety, or welfare an immediate suspension is necessary, they shall order the same." If that section is invoked, the City manager must "send a notice to the licensee or permittee . . . which shall contain a statement of the charge against the licensee or permittee and a definite time and place for a hearing . . . and shall order the licensee or permittee to show why their license or permit should not be suspended for an additional period of time or revoked." *Id.* Section 110.01 provides definitions for the "Licensing" chapter of the Code and defines "License" and "Licensee" to "[i]nclude, respectively, the words **PERMIT** or **PERMITTEE**, or the holder for any use or period of time of any similar privilege, wherever relevant to any provision of this subchapter or other law or ordinance." *Id.* (emphasis in original).

The City of Saginaw Code of Ordinances contains a separate chapter (in a separate title of the Code), which addresses water services. That chapter contains several potentially relevant

sections. Section 52.02 ("Water Emergencies"), authorizes the City Manager to declare a water emergency and prohibit certain uses of water if the City's total water usage "is about to equal or exceed the total supply being received by the City." *Id.* at § 52.02(A). No such water emergency occurred here. The subchapter entitled "Water Distribution System" also contains several relevant provisions. Section 52.17 ("Service: Turning On and Off"), states that only "an authorized employee of the City" may turn on or off any water service, with the exception of a licensed plumber who receives a written order from the Director of Finance. Section 52.19 ("Regulatory Authority"), provides as follows:

> The City Manager is hereby empowered, subject to approval by the Council, to make such rules and regulations, not in conflict with the provisions of this subchapter, relative to water mains, connections, extensions, water meters, and remote water meter registers which shall be served directly or indirectly by the City water distribution system, necessary for the accurate recording of the quantity of water delivered or necessary to protect public property or the safety or health of the public, and no person shall fail to comply with any such rule or regulation.

*Id.*

The subchapter entitled "Unfiltered Water Distribution" contains a section regarding "Discontinuation of Service." *Id.* at § 52.58. That section reads as follows:

> (A)   The City is hereby empowered to discontinue water service for non-payment of any water rates or charges due the City or for failure to comply with the rules and regulations adopted by the City.

> (B)   No service discontinued for the non-payment of water rates or charges due the City shall be reinstated except upon the prepayment of a turn-on service charge as established by the Water Rules and Regulations.

*Id.*

Defendants argue that the water services were ended pursuant to the City Manager's authority to suspend a license if doing so is "in the interest of the public health, morals, safety, or welfare." *Id.* at § 110.06(F). But that section is simply inapplicable here. Citizens of Saginaw are

- 14 -

not required to obtain a license or permit before receiving water services. In fact, § 52.11 appears to require the City to provide water services as long as the fees are paid and the water connection is "determined to be safe and adequate by the City Engineer." It would be illogical to apply the procedures in § 110.06 to the discontinuation of water services when a separate chapter (in a different title) of the Code is directly applicable.[6] Chapter 52 does not permit the City to terminate water services simply because a business license has been suspended.

Defendants might rely upon §§ 52.19 and 52.58 as authorizing their actions here, but that argument is likewise meritless. Section 52.19 permits the City Manager, subject to approval by the City Counsel, to "make such rules and regulations . . . relative to water mains, connections, extensions, water meters, and remote meter registers . . . necessary to protect public property or the safety or health of the public." Here, the City did not make any rules or regulations which Johnson violated. Rather, the City made a unilateral decision to suspend the business license out of an alleged fear for public safety. To the Court's knowledge, the City Manager has not proposed, nor has the City Council approved, any rule or regulation which predicates access to water on possession of a valid business license. Likewise, neither the City Manager nor the City Council have enacted any rule or regulation which permits water services to be terminated simply because the business receiving those services poses a threat to the public.

In fact, it is questionable whether § 52.19 would provide the City Manager authority to make such a rule or regulation. Section 52.19 contemplates the promulgation of rules related to "water mains, connections, extensions, water meters, and remote water meter registers" if necessary to protect the public health and safety. Read in context of the remainder of the chapter,

---

[6] The nonapplicability of § 110.06(F) is further underscored by the City's failure to comply with the procedures of that section. The City did not provide notice of the termination of water services before it occurred. The City did provide Johnson with a notice that her business license had been suspended, but that document was provided to Johnson *after* water services had been ended and did not mention the discontinuation of water services.

that section appears to reference only rules and regulations related to the safe *distribution* of water. Defendants have not attempted to argue that Johnson's business was using water in an unsafe way or threatening the integrity of the water distribution system. Rather, Defendants terminated Johnson's water services because they believed that her business, not her use of the water services, posed a threat to public safety. Section 52.19 thus does not provide authority for the manner in which water services were terminated here.

For similar reasons, Defendants cannot rely upon § 52.58. That section empowers the city to discontinue water services "for non-payment of any water rates or charges due . . . or for failure to comply with the rules and regulations adopted by the City." *Id.* As just discussed, the City has not adopted any rules or regulations which condition access to water services on running a business which poses no threat to public safety. And Johnson has alleged that she was current on her water payments at the time service was discontinued.

Thus, the City's termination of Johnson's water services was done without any legal authority to do so. The Court is cognizant that "extreme irrationality" is required for the Court to find the state administrative action to be arbitrary and capricious. *Pearson*, 961 F.2d at 1222. Relatedly, courts may not override a local authority's decision "'unless it is such a substantial departure from accepted . . . norms as to demonstrate that the [decisionmaker] . . . did not actually exercise professional judgment.'" *Id.* (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). When administrative officials are exercising statutorily-given discretion, then, their decision can almost never be considered arbitrary or capricious. *See Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995); *Stewart v. City of Lansing*, No. 1:08-CV-778, 2009 WL 910810, at *3 (W.D. Mich. Apr. 2, 2009). But here, Defendants made a decision which the Code of Ordinances does not authorize them to make (indeed, in the absence of additional rules

and regulations, the Code appears to generally require the City to initiate water services upon request and permits discontinuation only if the consumer does not pay for those services). Substantive due process requires a "rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Richardson v. Twp. of Brady*, 218 F.3d 508, 513 (6th Cir. 2000). Where the terms of the ordinance do not permit the action taken, the action is not rationally related to the terms of the ordinance. *See also Layman Lessons, Inc. v. City of Millersville, Tenn.*, 636 F. Supp. 2d 620, 652 (M.D. Tenn. 2008) ("[I]t was neither rational nor professional to make a zoning decision without actually verifying that the ordinance in question actually applied to the Property at issue.").

Additionally, Defendants' purported reason for terminating water services is of questionable legitimacy. As discussed above, Defendants assert that they suspended Johnson's business license and terminated her water services to protect the "health, morals, safety, and welfare of the community" because of a violent incident which occurred at Johnson's business. Def. Reply Br. Mot. Dismiss at 4, ECF No. 12. Defendants' desire to suspend business operations at Johnson's business because it feared future violent incidents bears a rational relation to a legitimate government purpose. But that purpose was completely accomplished by terminating Johnson's business license. Defendants have not articulated any reason why public safety demanded both that Johnson's business license be suspended *and* her water services terminated. The utter redundancy of the decision to discontinue water services suggests that it was "'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Pearson*, 961 F.2d at 1221 (quoting *Greenhill*, 519 F.2d at 10 n. 12)).

Johnson has plausibly alleged a substantive due process claim. Defendants may, in the future, provide additional evidence which demonstrates either that the water services were

terminated pursuant to authority provided in additional (as yet unidentified) rules and regulations, or that the City had terminated water services in similar situations in the past (meaning that the termination here was not a departure from accepted norms and professional judgment). Accepting as well-pleaded facts alleged to be true, however, Defendants have not shown that Johnson's substantive due process claim is deficient as a matter of law.

**ii.**

Defendants also seek dismissal of Johnson's procedural due process claim. In her complaint, Johnson argues that Defendants violated her procedural due process rights because they terminated her water services without giving prior notice or a hearing. Defendants admit that both prior notice and a hearing is required by due process, but contend that Johnson was afforded both.

"Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). *See also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that the "minimum requirements of due process" include both "written notice" and an "opportunity to be heard in person and to present witnesses and documentary evidence").

Defendants argue that Johnson received notice of the business suspension because it provided a "Notice of Immediate Suspension of Business Activity" to her on May 8, 2017.[7] *See* Not. Susp., ECF No. 7, Ex. 3. That document advised Johnson that her business license (and thus all commercial activity) had been suspended pursuant to § 110.06(F) and that a hearing on that suspension had been scheduled for May 11, 2017. The notice does not mention Johnson's water

---

[7] It is questionable whether this document can be considered by the Court in adjudicating the motion to dismiss. It is not referenced in or attached to the complaint. It might be considered a public record, but even then the Court is limited to recognizing its existence and may not consider any facts alleged therein. Ultimately, consideration of the document does not alter the Court's conclusion, and so it will be briefly discussed.

services, much less advise her that those services had been terminated. And, importantly, Johnson alleges that her water services were terminated on May 7, 2017, a day before the notice was sent. Compl. at 2. Accepting Johnson's allegations as true, her property interest in continued water services was infringed before *any* notice was provided. The notice sent one day later mentioned only the suspension of Johnson's business license and thus did not formally inform Johnson that her water services had been terminated. Johnson has related but distinct property interests in both her business license and the continuation of utilities service. Given the fact that the legal basis for the license suspension (§ 110.06(F)) does not authorize the termination of water services, the notice Defendants rely upon is clearly inadequate to satisfy due process.

For similar reasons, Johnson's complaint adequately alleges that Defendants have not provided her with a hearing and thus no "opportunity to be heard . . . 'at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

It is well settled that a pre-deprivation hearing is not always required by due process. *See e.g., United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 486 (6th Cir. 2014). *See also Matthews*, 424 U.S. at 343 (identifying "the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action"). However, "exceptions to the general rule requiring predeprivation notice and hearing" are appropriate only in "'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). Exceptions to the predeprivation hearing requirement include "situations where a government

official reasonably believed that immediate action was necessary to eliminate an emergency situation," *United Pet Supply, Inc*., 768 F.3d at 486, and "situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). And the Supreme Court has held that "[t]he demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." *Opp Cotton Mills v. Adm'r of Wage & Hour Div. of Dep't of Labor*, 312 U.S. 126, 153 (1941).[8]

Defendants admit that no predeprivation hearing was held. They contend that none was necessary because Johnson received a full and fair opportunity to contest the termination of her water services after the fact. In making that argument, Defendants point to the May 11, 2017, show cause hearing. *See* Hearing Tr., ECF No. 12, Ex. 2. As discussed above, the Court may take judicial notice of the fact that the hearing occurred, but is not permitted to consider the substance of the matters discussed at the hearing. At this stage, then, the Court cannot determine whether that hearing provided a "meaningful" opportunity to challenge the termination of water services without considering the substance of the hearing transcript. That kind of extra-pleading analysis is not permitted at the Rule 12(b)(6) stage.

And the mere existence of the hearing (which the Court can take judicial notice of) is not sufficient to justify dismissal of Johnson's procedural due process claim. Defendants admit that the hearing was scheduled and held pursuant to § 110.06(F), the provision which empowers the City Manager to immediately suspend a license if a hearing on that suspension is held within five days. Thus, the hearing was held expressly to provide Johnson an opportunity to challenge the

---

[8] The Supreme Court has since adopted a generalized test for determining whether a predeprivation hearing (or other due process requirements) is necessary in a given situation. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). Nevertheless, *Opp Cotton Mills* remains informative.

license suspension. Perhaps Johnson was additionally afforded the opportunity to address the termination of her water services at the hearing. But considering the fact that she had not yet received formal notice of the termination, that proposition is suspect.

Thus, Johnson has plausibly alleged that she has received *no* hearing regarding the termination of her water services. Accordingly, she has stated a cognizable procedural due process claim regardless of whether a predeprivation hearing should be required in this circumstance. Defendants' motion to dismiss will be denied.

## C.

Finally, Johnson has filed a motion for Rule 11 sanctions in which she contends that the arguments Defendants advanced in their motion to dismiss include intentional misstatements of law. ECF No. 19. Johnson also appears to argue that Defendants should be sanctioned for filing a motion to dismiss, instead of answering, and thus delaying discovery. *See* Mot. Sanctions at 8, ECF No. 19 ( arguing that Defendants should be sanctioned for filing the motion to dismiss because it was filed "for an improper purpose: to cause unnecessary delay and needlessly increase the cost of litigation by simply not filing an answer").

Federal Rule of Civil Procedure 11(b) requires attorneys who file a document with the court to certify "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Id.*

If an attorney violates Rule 11(b), "after notice and a reasonable opportunity to respond, . . . the Court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for its violation." *Id.* at Rule 11(c)(1). "[T]he test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4).

Although the motion to dismiss briefing approached the boundaries of zealous advocacy, it was reasonable under the circumstances. To begin with, Johnson's argument that Defendants should be sanctioned for their decision to file a motion to dismiss because they did so "to cause unnecessary delay and needlessly increase the cost of litigation by simply not filing an answer" has no merit. Federal Rule of Civil Procedure 12(b) contemplates that motions seeking dismissal may be filed instead of answers. Where Defendants believe in good faith that some or all of the claims advanced in the complaint are deficient as a matter of law, they are entitled to seek dismissal before discovery. Plaintiffs have no right to proceed to discovery on facially nonmeritorious claims.[9]

---

[9] Johnson also appears to argue that the Court must accept Johnson's legal allegations as true if they are plausible. *See* Mot. Sanctions at 6. That is false. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79. Thus, Defendants may legitimately argue that Johnson's claims, even assuming all alleged facts to be true, are legally deficient.

Johnson also specifically challenges two arguments that Defendants made in their motion to dismiss. First, she argues that Defendants' assertion that Johnson was not deprived of a constitutionally protected property right was not warranted by existing law. As explained above, Defendant's argument on that point had no merit. But the argument was not sufficiently frivolous to justify sanctions. The cases upon which Johnson relied in asserting that a property interest had been infringed upon involved residential utility services. Defendants argued that, because this case involves a deprivation of commercial utility services, those cases are distinguishable. As explained above, that distinction is not persuasive. But it was a legitimate difference between those cases and the present suit. Defendants' attempt to distinguish controlling cases by identifying a factual difference, though not meritorious, was not sanctionable.

Johnson also argues that the Defendants' arguments challenging her procedural due process claim were frivolous (indeed, "untruthful"). Reply Br. Sanctions at 3, ECF No. 22. She notes that the "Notice" which Defendants relied upon did not include any mention of the City's termination of her water services. But Defendants did not contend that the notice in question expressly mentioned the discontinuation of water services. Rather, they asserted that the notice was sufficient because "Plaintiff cites no authority or Ordinance that requires a separate and specific notice of each and every action undertaken by the City to suspend her operations." Resp. Br. Sanctions at 4, ECF No. 21. The Court rejected that argument, but it is not patently unreasonable.

Johnson believes, understandably, that the Defendants have advanced nonmeritorious arguments while seeking dismissal of her suit. But sanctions are not warranted every time a party advances a meritless argument. *See Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). Indeed, in her motion for remand, Johnson advanced an argument which has been overwhelmingly rejected by federal courts. That argument was not sanctionable, and neither were the arguments

advanced by Defendants in their motion to dismiss. Johnson's motion for Rule 11 sanctions will be denied.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Johnson's motion to remand, ECF No. 3, is **DENIED.**

It is further **ORDERED** that Defendants' motion to dismiss, ECF No. 7, is **DENIED.**

It is further **ORDERED** that Plaintiff Johnson's motions to strike, ECF No. 13, 14, are **DENIED.**

It is further **ORDERED** that Plaintiff Johnson's motion for sanctions, ECF No. 19, is **DENIED.**

Dated: December 20, 2017

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 20, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager
