# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

RITA R. JOHNSON,
    Plaintiff,

v.

CITY OF SAGINAW,
JASON CABELLO, and
JOHN STEMPLE,
    Defendants

_____/

Case No.: 17-cv-13174
Honorable Thomas L. Ludington

**MOTION**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
O'NEILL, WALLACE & DOYLE, PC
Attorney for Defendants
300 St. Andrews Dr, Suite 302
Saginaw, MI 48638
(989) 790-0960
gregmair@owdpc.com

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES Plaintiff RITA R. JOHNSON, by and through counsel, and moves for summary judgment, excepting the issue of damages and applicable remedies, pursuant FRCP 56.

Plaintiff, by counsel, sought concurrence with the relief sought by this motion and, after consultation with opposing counsel, that concurrence was not provided. E.D. Mich. LR 7.1(a).

Date: November 21, 2017          RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

RITA R. JOHNSON,
    Plaintiff,

    v.

CITY OF SAGINAW,
JASON CABELLO, and
JOHN STEMPLE,
    Defendants

_____/

Case No.: 17-cv-13174
Honorable Thomas L. Ludington

**BRIEF**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
O'NEILL, WALLACE & DOYLE, PC
Attorney for Defendants
300 St. Andrews Dr, Suite 302
Saginaw, MI 48638
(989) 790-0960
gregmair@owdpc.com

---

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## ISSUES PRESENTED

I.

Except as to the issue of damages and applicable remedies, is
Plaintiff Rita R. Johnson entitled to summary judgment?

Answer:
Yes.

## MOST CONTROLLING AUTHORITY

FRCP 56
*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**INTRODUCTION**

On its own and without forewarning or an opportunity to heard, the City of Saginaw, by its employees/officials, simply shut off Plaintiff Rita R. Johnson's potable water. Chief Inspector John C. Stemple made the decision and called Joe Gough, water department foreman, to make that happen. He dispatched Jason Cabello, the water department field technician. Cabello used his "t-stick" and ended delivery of portable water delivery services to Johnson's building. Our highest courts, nearly forty years ago, recognized that utility water services "is a necessity of modern life." *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 18 (1978). It further confirmed that the discontinuance of water "for even short periods of time may threaten health and safety," and held there is a constitutionally protected right to continued utility service.

Defendants were and have been simply indifferent to this federal right. They failed to provide any notice or hearing (pre- or post-) before cutting off potable water delivery to Johnson's buildings and many others. And this is the City's regular "policy and practice" to simply turn off the property owner's water without notice. The turning off of water services is arbitrary and capricious government action designed to inflict harm, hold property owners hostage, and was done with callous indifference to the federally protected

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

due process rights. Because there is no material question of fact as to these issues, summary judgment is warranted.

## FACTS

Plaintiff Rita R. Johnson, an African-American business owner and an honorably discharged and retired veteran, owns a building at 110 North Washington in downtown Saginaw, Michigan and is the owner of Rita's Southern Soul Café in Saginaw. **Exhibit A; Exhibit K, ¶¶3, 5, 8, 9.** As the building owner, she is a citizen-customer of the City's municipal water delivery services. She was and has been fully current on all charges and fees for water delivery, i.e. there was and is no past due amounts owed. **Exhibit K, ¶11.**

Rita's Southern Soul Café provides event facilities as a rental and also provides food and non-alcoholic drink in a restaurant-based business. *Id.,* **¶6.** The Cafe serves as a venue for birthday parties, fashion shows, blues/jazz events, charitable events, holiday gatherings, dance classes, literacy workshops, black history workshops, church events, and had (until the business suspension) a restaurant staff. *Id.*, **¶7.**

Johnson had rented her building to a customer, Mr. Andrick Pruitt, for a birthday party starting at 9:00p.m. on May 5, 2017 through 2:00a.m. May 6, 2017. **Exhibit N.** The birthday party was a non-alcohol event. **Johnson**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**Dep, ECF No. 74-2, p. 49.** On the early morning hours of May 6th, unknown gangsters fired weapons at Rita's business. **Exhibit K, ¶12.** According to the testimony of City Police Chief Robert Ruth, a simple dispute (which he called a "fight") started at the Café, and the security hired by Mr. Pruitt[1] removed them from the Café. At that point, for whatever reason, members of a street gang obtained weapons from their vehicles and started firing at the Café. Chief Ruth testified the matter did not involve Johnson but rather "it's got something to do with north side and south side, all gang related." **Exhibit G, p. 80**. Johnson avers the dispute and the shooting had nothing to do with her; she did not know it was going to happen, did not authorize the shooting, and has no idea who did the shooting. **Exhibit K, ¶¶12-14.** To date, no one has been convicted for the illegal discharge of firearms or other related crimes as to the shooting against her building. ***Id., ¶28.***

Eighteen hours later, without notice or a hearing of any type, her potable municipal water service was simply just shut off. ***Id., ¶¶10, 28.*** Defendant Jason Cabello is the City water department field technician who

---

[1] Security was the responsibility of the birthday party host. **Exhibit N, p. 2; see also Johnson Dep, ECF No. 72-2, p. 48** (Q. Did the individual who hosted this event have security? A. Yes.). Moreover, under Michigan law, a business owner is not responsible for the unforeseeable criminal acts of third-parties. See *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 501 (1988) (duty of reasonable care does not include providing armed, visible security guards to deter criminal acts of third parties). The duty to provide police protection belongs with the City. *Id.*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

handles water shut offs, including the one at Johnson's building. **Exhibit H, p. 7.** Cabello acknowledges it was him who used what is known as the "t-stick" device to end the water supply going into the building. ***Id.***, **at 8-9.** A copy of the work order documenting the shutdown is attached as **Exhibit F.** He also admits that he did not provide notice or a hearing to Johnson. **Exhibit H, p. 16, 24.** Moreover, Cabello was never trained by the City of Saginaw that notice and a hearing is required before he shuts off somebody's water. ***Id.,*** **at 24.** The termination of water services was done in a backhanded way to shut down any use of Johnson's building and causing unsanitary conditions. **Exhibit K, ¶19.**

Despite his action, Cabello was not the one who made *the decision* to turn off the water. **Exhibit H, p. 37-38.** Cabello testified he was directed to turn off the water by his foreman, Joe Gough. ***Id.***, **at 16-17.** Gough, in turn, testified that he was told to shut off the water by City Chief Inspector John Stemple. **Exhibit I, p. 5-6.**[2] Stemple gave no indication to Gough why Stemple was ordering the water shut down. ***Id.***, **at 7.**

---

[2] Gough also confirmed that notice and hearing was not provided to Johnson. **Exhibit I, pp. 9-10.** The lack of notice and hearing for water customers is "typical" for the City and its employees. ***Id.*** Like Cabello, Gough confirmed he too was given no training or education as to the requirements of needing to have notice or a hearing before shutting off water. ***Id.***, **at 10-11.**

Gough also confirmed that notice and hearing was not provided to Johnson. **Exhibit I, pp. 9-10.** The lack of notice and hearing for water customers is "typical" for the City and its employees. *Id.* Like Cabello, Gough confirmed he too was given no training or education as to the requirements of needing to have notice or a hearing before shutting off water. *Id.,* **at 10-11**.

At deposition, Stemple conceded the shut off decision was his. **Exhibit J, p. 27**; see also **p. 25** ("I was the person that ordered the water off"). He expressly conceded he "did not give any notice to Ms. Johnson about her water being terminated *before* or *after* the termination occurred." *Id.,* **at 10** (emphasis added). Despite this concession, Stemple also tried to unconvincingly assert that a hearing (but no notice) was offered to Johnson to challenge water delivery at the same time a separate business suspension hearing[3], but that is just simply not true. *Id.,* **at 10.** The Notice regarding the business suspension hearing makes no mention of water or the shut off of water. **Exhibit L.** Stemple admitted that when challenged. **Exhibit J, pp. 5-6**; see also **p. 10** (Stemple: "I think I've already stated that it [i.e. water is

---

[3] A related case, in which Johnson alleges that the City of Saginaw and certain City employees violated her due process rights when they suspended her business license, was filed in this Court on July 25, 2017. *See Johnson v. Morales, et al*, Case No. 1:17-cv-12405. That matter is awaiting decision by a panel of the United States Court of Appeals for the Sixth Circuit.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

going to be terminated or can contest the termination of water services] doesn't exist in that document"). Moreover, at the hearing itself, the hearing officer confirmed—

> It is my understanding that this show-cause administrative hearing that is set for today, May 11, 2017, at one o'clock p.m., is in regard to the issuance of the City of Saginaw a notice for the immediate suspension of business activity of Rita's Southern Soul Cafe located at 110 North Washington, Saginaw, Michigan 48601. Further, the City has taken this action for the immediate suspension of business activity pursuant to the Saginaw Code of Ordinance Subsection 110.06(f).

**Exhibit G, pp. 5-6.** He said nothing about potable water services termination. His decision after the hearing does not address or even makes mention of water services termination either. **Exhibit N.** It was never part of or made part of the proceedings by the City. *Id.,* **p. 2.** Unsurprisingly, Saginaw Code of Ordinance Subsection 110.06(f) has nothing to do with Saginaw's water delivery. See **Exhibit C.**

When pressed, Stemple conceded he had no knowledge of any of the shooters being employees or agents of Rita Johnson's business." **Exhibit J, pp. 63.** He actually further admitted he did not know who the shooters actually were. *Id.,* **at 64.** When asked of Stemple why he shut down the water, he testified it was to generically "save lives," but could not identify whose lives he had saved by violating due process. *Id.,* **at 13.** Stemple further stated that he ordered the shut down on Johnson's potable water due

6

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

to "simply the fact that there were armed people shooting guns in the street." **Exhibit J, p. 61.** When asked what ordinance made it Johnson's legal responsibility to prevent third-party criminal acts, Stemple could not identify any. *Id., p. 61-62.*

Stemple was also questioned whether he had "ever shut off the water to someone's business because there was a shooting at the business, other than Rita Johnson?" Stemple confirmed he had. *Id., at 14.* He confirmed it was "practice and policy" of the City to shut down water delivery without notices or a hearing. *Id., at 22-24.* He could identify at least four times previously. *Id., at 21.* Moreover, when asked by what criteria he uses to decide whether to terminate water services without due process, he could not provide an objective or rational answer. *Id., at 35-62.* Lastly, when asked if the "same exact events occurred that happened at Rita Johnson's place happened at a place right next door to it, same set of circumstances occurred today, would you shut down the water again today," Stemple answered "yes." *Id., at 32.* This lawsuit and this Court's prior decision changed nothing about the way Defendants handle due process for water service terminations. *Id.*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Next, he also suggested he had the power to shut down the water delivery to Johnson's building based on Section 112.3 of the Michigan Building Code.[4] That provision reads—

> The building official shall have the authority to authorize disconnection of utility service to the building, structure or system regulated by the code and the referenced codes and standards set forth in Section 101.4 in case of emergency where necessary to eliminate an immediate hazard to life or property or when such utility connection has been made without the approval required by Section 112.1 or 112.2. The building official shall notify the serving utility, and whenever possible the owner or occupant of the building prior to taking such action. If not notified prior to disconnecting, the owner or occupant of the building, structure or service system shall be notified in writing, as soon as practical thereafter.

This provision is not applicable for several reasons. First, the Building Code does not apply because no one is constructing a building and the issues of May 6, 2017 have nothing to do with Johnson's building.  Second, there was no emergency at 7:30p.m. on Saturday, May 6, the time of the water shut off, and there separately was no "immediate hazard to life or property" either, which was nearly a day after the third-party gangsters' shooting into Johnson's building. Moreover, the provision is also not applicable because it required Stemple to give notice to the "owner or occupant of the building *prior to* taking" the action of terminating utility services. He failed to do so. **Exhibit**

---

[4] The Michigan Building Code is a state-based set of building construction standards which can be enforced by local municipalities if they opt to do so by local ordinance. Saginaw has done so. **Exhibit J, p. 7**.

**J, p. 10.** Furthermore, while Section 112.3 does not call for a hearing of some sort, federal law does. To the extent that Stemple would argue that a hearing is not required premised on the language of Section 112.3, the application of such a rule would be unconstitutional.

Nearly five months of radio-silence passed without the restoration of water services by any defendant; any notice of any sort of hearing to challenge the discontinuation of water services; and without any opportunity or ability to end the discontinuation of water services. **Exhibit K, ¶¶ 29, 30, 32, 33.** No defendant, at any time, provided any information about how to get the water turned back on. *Id.,* **¶32.** Johnson personally met with city employees while services were terminated and inquired why the City did not resume water delivery service. *Id.,* **¶34.** They refused to resume water delivery. *Id.*

Johnson sued the City and the unknown water department employee (who later was named as Defendant Cabello) on September 22, 2017 in state court (see **Notice of Removal, ECF No. 10**) and concurrently filed a state court motion for an *ex parte* order to show cause why the City should be allowed to continue the shut off of water. **Exhibit D.** Before that motion was decided by the state court judge, Defendants removed the case to this Court. **Notice of Removal, ECF No. 10.** After removal, the undersigned began the

9

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

process to renew motion in this Court and Defendants suddenly decided that water services would be restored. Water services was restored in October 2017—early five months from the time of termination and only after an order of this Court was being sought. **Exhibit K, ¶¶34;** see also **Exhibit M.** Stemple was later added to the suit for his role in the termination of potable water services. See **Order, RE 38** (authorizing addition of Stemple).

## ARGUMENT

Plaintiff has asserted two due process claims—one substantive and one procedural. Discovery has confirmed pled facts which supports and proves Johnson's case without any remaining material question of fact, except as to damages. Summary judgment, except for damages, is warranted.

### *Due Process*

The Fourteenth Amendment requires due process if state action is going to deprive any person of life, liberty or property. U.S. Const., Am. 14, § 1. It is enforceable via federal law. 42 U.S.C. §§ 1983, 1988. Courts have analyzed Section 1983 enforcement actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process. *Mansfield Apartment Owners*

*Ass'n v. City of Mansfield*, 988 F.2d 1469, 1473-1474 (6th Cir. 1993). Both are raised in this case.

### Procedural Due Process

Procedural due process requires that when the government seeks to terminate a protected interest, it must, except in highly limited circumstances, afford notice and opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective.  E.g. *Pittman v. CCDCFS*, 640 F.3d 716, 729 (6th Cir. 2011). As this Court correctly recited—

> "Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). *See also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that the "minimum requirements of due process" include both "written notice" and an "opportunity to be heard in person and to present witnesses and documentary evidence").

**Opinion, ECF No. 23, PageID #423.** This is the correct standard. "[T]hose deprivations carried out without due process are actionable under 42 U.S.C. § 1983." *Harris, supra*, at 1401. Procedural due process rules are meant to protect persons from the mistaken or unjustified deprivation of life, liberty, or property.  *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Both the Supreme Court and the Sixth Circuit have indeed held that the due process clause applies to termination of municipally-provided utility services. See, e.g., *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978); *Palmer v.*

11

*Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 165 (6th Cir. 1973). "It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due process clause." *Mansfield*, *supra*, at 1474. Many others have held the same, even prior to *Memphis Light*. See *Limuel v. Southern Union Gas Co*, 378 F. Supp. 964 (W.D. Texas 1974) (collecting cases). Johnson has properly proven this claim—a property right deprived without any notice or hearing whatsoever as to her potable water delivery services. Previously when Defendants asserted that access to and continuation of utility services for one's business-related activities is not a constitutionally protected property interest, this Court held that to be "entirely without merit." **Opinion, ECF No. 23, PageID #411.**

It is undisputed that Johnson received *no* notice of suspension of potable water services. **Exhibit K, ¶¶19, 21.** This violates due process. *Harris, supra*, at 1401; *Pittman, supra*, at 729. Johnson also received *no* hearing or otherwise any opportunity for a predeprivation hearing appropriate to the nature of the case. *Id.*; **Exhibit K, ¶¶21-22.** In many instances, the typical question is what amount of process (i.e. what level of hearing) is due. In most cases, the government has provided some form of process but the challenger is asserting it is of an insufficient amount or character. The

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

applicable test to review that question was provided by *Mathews v. Eldridge*, 424 U.S. 319 (1976).

However, we do not need to actually undertake the *Mathews* analysis for two reasons. First, the Supreme Court has <u>*already*</u> explained, in this context of municipal utility services, that the due process requires (i) notice informing the customer not only of [1.] the possibility of termination but also [2.] of a procedure for challenging and (ii) an established procedure for resolution of disputes or some specified avenue of relief for customers who dispute the existence of the liability. *Memphis Light*, *supra*, at 12. So, we know what process is due vis-à-vis *Memphis Light*; we do not need to reinvent the wheel. And second, Defendants in this case provided <u>*no*</u> notice or hearing <u>*of any type*</u>, let alone some or enough to even begin to attempt to argue that they might have met the *Memphis Light* standard. Zero notice and hearings fails to satisfy *Memphis Light*. As such, this Court need not go through the difficult task of determining what is the needed process but can instead conclude, as a matter of law, that because no notice or process was provided, it *per se* violated due process in both ways.

As such, Johnson is entitled to summary judgment on her procedural due process claim, and it leaves the only question as to the amount of

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

damages, including punitive damages, and other remedies to be awarded to Johnson.

### *Substantive Due Process*

Additionally, Defendants also violated substantive due process. Johnson contends that Defendants' unilateral decision and actions to end her water services was arbitrary and capricious and should shock the conscience of the Court, which frames as a claim for violation of her substantive due process rights. To state a substantive due-process claim regarding property, a plaintiff needs to show "that (1) a constitutionally protected property… interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). This Court has directed the parties to a zoning case, *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992), as providing the applicable framework.[5]

*Pearson* first explains that "[t]he doctrine that governmental deprivations of… property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Pearson, supra*, at 1216. It is also been explained as being a

---

[5] And because delivery of water is an existing property right, it may not be arbitrarily cut off water—depriving property—without a legal basis in doing so.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

constitutional protection against "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir. 1988). After giving various examples, *Pearson* teaches that "[t]he right not to be subject to 'arbitrary or capricious' action by… administrative action" fits as a "substantive due process right." *Pearson, supra*, at 1217. Due process is violated when an administrative action "is not supportable on any rational basis" or is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Id.*, at 1222.[6] Moreover, a Michigan city and its officials have no inherent or automatic legal authority to act under Michigan law. In Michigan, cities like Saginaw only "have the limited powers 'expressly conferred upon them by the Constitution of the State of Michigan, by acts of the Legislature, or necessarily implied therefrom.'" *Crain v. Gibson*, 73 Mich. App. 192, 200 (1977), citing *Alan v. Wayne Co*, 388 Mich. 210 (1972). Defendants have cited no state law which provides or empowers them the inherent authority to immediately shut off of water when they, acting in an executive capacity, self-decide it is in the City's interest to do so. Moreover, the City of Saginaw, by ordinance, has not given

---

[6] Challenges on administrative action is less deferential than for legislature action. *Pearson, supra*, at 1223.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

its employees and officials the power to act in such a totalitarian manner either.

This Court has already concluded that "Johnson has a constitutionally protected property interest in the continuation of water services for her business." **Opinion, ECF No. 23, PageID #412.** Next, Defendants, and particularly Stemple, did not have any state law, local ordinance, or rational basis for terminating the delivery of water, and moreover, such action was willful and unreasoning action. And as this Court correctly previously opined, there is no reason why public safety demanded both that Johnson's business license be suspended *and* her water services terminated. Even assuming arguendo that the public safety purpose was to prevent another shooting, it is patently unreasonable action to claim the termination of water would prevent a further gangster shooting. Gang-land shootings are not drawn to the existence of running potable water via the City's utility services. The termination of water serves was not a rational act but one more akin to retaliation for causing embarrassment to the City's regentrification of the downtown area.

Moreover, Defendants lack any legal authority to take such action. The City Water Code does not provide any defendant the authority (whether by the Ordinance or City Manager made rules) to terminate water services for

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

16

third-party gangster shootings which are not the actions or responsibility of Johnson. **Opinion, ECF No. 23, PageID #412-414.** Moreover, any suggested that the business licensing section, § 110.06 of the City Code, provides authority is meritless. That section is simply inapplicable here because Johnson is not required to obtain a license or permit before receiving or continuing to receive water services. As this Court also correctly noted previously, § 52.11 of the City Code (**Exhibit B**) requires the City to provide water services as long as the fees are paid and the water connection is "determined to be safe and adequate by the City Engineer." **Opinion, ECF No. 23, PageID #415.** As such, the City's ordinances do not authorize the action undertaken by Defendants.

It is also expected that Defendants may argue that Section 112.3 of the Michigan Building Code authorized the termination of water services "in case of _emergency_ where necessary to eliminate an _immediate_ hazard to life or property or when such utility connection has been made without the approval required by Section 112.1 or 112.2."[7] The Michigan Building Code is only for building construction matters, not general business operations. But even by the language (which is putting a square peg in a round hole),

---

[7] The without-the-approval-required theory under Section 112.3 is easily dispensed with—it is not applicable.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Defendants would need to show that at 7:30p.m. on May 6, 2017 there was 1.) an emergency and 2.) an immediate hazard to life or property needing elimination. This is not possible. At the time the water was terminated, there was no emergency and there was no eliminate any immediate hazard to life or property due to the lack of any hazard. When Cabello used his "t-stick" to shut off water, it was at 7:30p.m. on May 6, 2017. Johnson's affidavit confirms there was no emergency; the Café was already closed. In addition, there was no immediate hazard to life or property type emergency, as anything related the third-party gang shooting had passed more than 18 hours earlier.

The timeline here undercuts any claim of emergency. The gangster shooting (which Johnson and her business had no part of) occurred in the early, early morning hours of May 6, 201.[8] Gough testified that Stemple called him in "the evening" which means it had to be, at earliest, nearly 16 to 17 hours later on the evening of Saturday, May 6. **Exhibit I, p. 6.** Gough dispatched Cabello who turned off the water at 7:30p.m. that same Saturday night.[9] **Exhibit I, p. 13.** That is approximately 18 hours after the gangsters

---

[8] The Work Order is not precise of when certain actions/decisions were ordered because these are entered into the computer on the Monday following any work being done over the weekend. **Exhibit H, p. 14**.

[9] Cabello confirmed it was Saturday, May 6 and the Work Order's notes section confirms it was at approximately 7:30p.m. **Exhibit H, p. 14; Exhibit F.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

fled after the shooting. The private event booked for her Café on Saturday night was cancelled due to the damage to the windows. **Exhibit K, ¶27.** Being such, there was no one at the Café at 7:30p.m. and thusly no emergency or potential of one needing to "eliminate an *immediate* hazard to life or property" under Section 112.3. The affidavit of Johnson confirms there was no hazard to life or property on that Saturday evening. *Id.*, **¶¶26-27.** Therefore, Section 112.3 does not authorize Defendants' actions, either collectively or individually, for lack of an emergency and for the lack of hazard to life or property needing "immediate" elimination.

In short, Johnson's substantive due process rights were violated by terminating water services which "is not supportable on any rational basis" or is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." Summary judgment is warranted.

### *Monell*

A constitutional claim against a municipality[10] under § 1983 must be based on its own conduct. *Monell*, *supra*, at 691. Thus, in an official-capacity suit, the entity's policy or custom, and not just their employee's singular acts,

---

[10] In an official-capacity claim, the relief sought is only nominally against the official and, in fact, is against the official's office and thus the government entity itself. *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017) (citations omitted). This Court ordered official capacity claims to be merged with the claims against the City of Saginaw directly. **Order, ECF No. 38, PageID #663.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

must have played a part in the violation of federal law. See *Monell v. New York City Dept. of Social Service*s, 436 U.S. 658 (1978). To meet the *Monell* standard, a civil rights plaintiff uses at least one of four methods to establish municipal liability: 1.) an officially adopted or promulgated policy, or legislative enactment; 2.) a custom or practice that is not written or formally adopted, but that is a pervasive, long standing practice that has the force of law; 3.) a failure to train, supervise, discipline, or adequately screen; and/or 4.) point to a particular decision or act made by someone who is asserted to be a final policymaker for the entity. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The governmental custom can meet the *Monell* standard when a custom or practice exists but has not received formal approval through the body's official decision-making channels. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003). However, custom or usage has the force of law as a "widespread practice" when "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the policymaker with responsibility for oversight that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Here, Stemple concedes that termination water services without due process is "practice and policy" of the City. **Exhibit J, p. 22-24.** Moreover, it has regularly occurred—at least four times acknowledged by Stemple. ***Id., at 21.*** Gough acknowledges notices or hearings never happen. **Exhibit I, pp. 9-10** ("just typical and normal" that there's no hearing or no notice when the City shuts off the water). Moreover, the City has conceded in its recent court filing that water shut offs without due process have happened to "over a dozen businesses" and is a "past practice." **Brief, RE 74, PageID #1284.** This all meets *Monell*.

In the alternative, *Monell* also imposes liability on its failure to train. "[E]vidence pointing to a City's failure to provide <u>any</u> training on key duties with direct impact on the constitutional rights of citizens" meets *Monell* on a failure to train theory. *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (emphasis added). It has been well-established since the 1970s that termination of utility services is protected by due process and the character of the process that is due. *Memphis Light, supra; Palmer, supra.*

All three City individuals involved with the termination of water services without due process testified that the City has completely failed to provide proper training about due process. **Exhibit H, p. 24** (Cabello); **Exhibit I, pp. 10-11** (Gough); **Exhibit J, p. 11** (Stemple). In a recent filing, the City has

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

expressly conceded neither Stemple nor Cabello were trained at all. **Brief, ECF No. 74, PageID #1292-1293.** The *Monell* standard is again met.

### *Damages*

By this motion, Johnson is reserving the issue of damages (and all other remedies). However, there are a few points to make as to this posture. First, violations of constitutional rights are redressed with, at minimum, nominal damage awards. *Midwest Media Property, L.L.C. v. Symmes Twp.*, 503 F.3d 456, 481 (6th Cir. 2007); see also *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Punitive damages are also going to be sought against the two individual defendants, but especially Stemple. Section 1983 authorizes the award of punitive damages against officials in their individual capacity when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); see also **Exhibit J, p. 32** (Q. "Assuming the same exact events occurred that happened at Rita Johnson's place happened at a place right next door to it, same set of circumstances occurred today, would you shut down the water again today?" Stemple: "Yes"). Violations of due process can be awarded punitive damages, and may be awarded even when suffering only nominal damages from a deprivation of federal rights. See, e.g., *White v. McKinley*, 605 F.3d 525 (8th Cir. 2010); *Washington v. Kirksey*, 811 F.2d 561 (11th Cir.

1987); *Busche v. Burkee*, 649 F.2d 509 (7th Cir. 1981); *Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004); see also *Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629 (6th Cir. 2005).

## RELIEF REQUESTED

WHEREFORE, Plaintiff RITA R. JOHNSON, by counsel, respectfully requests this Court to grant her summary judgment on both counts, leaving the issue of damages for resolution by the *Johnson* jury and all other remedies for further resolution.

Date: November 21, 2017                RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: November 21, 2018            RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

24