UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RITA R JOHNSON,

                Plaintiffs,                              Case No. 17-cv-13174

v                                            Honorable Thomas L. Ludington

CITY OF SAGINAW, JASON CABELLO,
and JOHN STEMPLE,

                Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On September 22, 2017, Plaintiff Rita R. Johnson filed suit in the Saginaw County Circuit Court against Defendants City of Saginaw (the "City") and Water Department Worker No. 1. Johnson contended that Defendants "arbitrarily and capriciously turned off the water supply" to her business on May 7, 2011, "without notice or authority." Compl. at 2, ECF No. 10, Ex. B. Defendants removed the case to this Court several days later. ECF No. 1. On September 29, 2017, Johnson filed a motion to remand the case, arguing that it was improperly removed. ECF No. 3. Several days later, Defendants filed a motion to dismiss the suit. ECF No. 7. On December 20, 2017, the Court issued an opinion and order denying the motion to remand, denying the motion to dismiss, and resolving several other miscellaneous motions. ECF No. 23. On January 5, 2018, Johnson filed an amended complaint pursuant to a stipulation. ECF No. 28. The first amended complaint identified Jason Cabello as the water department worker identified anonymously in the original complaint.

Afterwards, the case entered discovery. ECF No. 33. On May 7, 2018, Johnson filed a second amended complaint having obtained leave of the Court. ECF No. 39. The second amended complaint named John Stemple (the Chief Inspector for the City of Saginaw) as another Defendant. On July 19, 2018, Johnson filed a motion for leave to file a third amended complaint which the Court denied. ECF No. 53, 70.

On November 19, 2018, Defendants filed a motion for summary judgment. ECF No. 74. Two days later, Johnson filed a motion for partial summary judgment. ECF No. 75. For the following reasons, Defendants' motion will be denied and Johnson's motion will be granted in part.

## I.

Rita Johnson owns and operates Rita's Southern Soul Café in Saginaw, Michigan. Am. Compl. at 2, ECF No. 39. She rents out the space on weekends for various events, such as parties, receptions, and baby showers. Johnson Dep. at 16, ECF No. 74-2. On May 5, 2017, Johnson rented the space to Andrick Pruitt for a birthday party. *Id.* at 47–48. Pruitt had hired a security company to provide eighteen security guards for the party. *Id.* at 48; Hearing Transcript May 11, 2017 at 12, ECF No. 74-3. Some of the guards were wearing bulletproof vests and at least one carried an AK-47 style assault rifle. ECF. No. 74-3 at 16. At approximately 1:45a.m. the morning of May 6, 2017, approximately sixty shots were fired at the building as the party was still ongoing. ECF No. 74-2 at 47; ECF No. 74-3 at 14; ECF No. 75-12 at ¶12. The Saginaw police chief, Robert Ruth, believed the incident was gang related. ECF No. 74-3 at 80.

The Saginaw police informed Defendant Stemple, Chief Inspector for the City of Saginaw, about the incident and Stemple determined that Johnson's water services should be suspended to prevent any further activities from occurring at the premises. Stemple Dep. at 9, 50, ECF No. 74-

4. The evening of May 6, Stemple instructed Joe Gough, Water Department Foreman, to suspend Johnson's water services. Gough Dep. at 6, ECF No. 74-5. Gough contacted Defendant Cabello, a Saginaw Water Department utility worker, to perform the suspension. *Id.* at 7. A work order was issued and Cabello shut off the water services to Johnson's business. Cabello Dep. at 12, 22, ECF No. 74-6.

The City provided Johnson no notice that it was suspending her water services. *Id.* at 16; Gough Dep. at 9–10, ECF No. 75-10. On May 8 however, the City provided her notice that it had suspended her business license. Notice of Suspension, ECF No. 74-8. The notice provided

> PLEASE BE ADVISED THAT PURSUANT TO THE CITY OF SAGINAW ("CITY") CODE OF ORDINANCE, **<u>ALL ACTIVITY</u>** RELATED TO THE USE AND/OR OPERATION OF THE PROPERTY LOCATED AT 110 N. WASHINGTON AVENUE SAGINAW MI 48601, ALSO KNOWN AS "RITA'S SOUTHERN SOUL CAFÉ" (ESTABLISHMENT") IS HEREBY SUSPENDED, **EFFECTIVE MAY 8, 2017**.

*Id.* (bold and underline present in original). The notice further provided that pursuant to Ordinance O-1 Sec. 110.06(F), a hearing would be held on May 11, 2017 where Johnson could present a defense against the suspension. *Id.* The City held the hearing, granting Johnson the opportunity to be heard and to present witnesses and evidence. *See* Hearing Transcript, May 11, 2017, ECF No. 74-3.

Johnson's water services continued to be suspended following the business license suspension hearing. Johnson claims that she contacted the City requesting that her water services be reinstated, but that her water remained turned off. Johnson Aff. at ¶33, ECF No. 75-12. The City represents that it has no record of Johnson making such a request. ECF No. 74-4 at 26. It was not until after Johnson filed this lawsuit that her water services were reinstated, nearly five months after the City initially suspended them. ECF No. 75-12 at 4.

In her second amended complaint, Johnson asserted two causes of action. Second Am. Compl., ECF No. 39. First, she alleged that Defendants' actions violated her substantive due process rights. She argued that Defendants "arbitrarily and/or capriciously ended Plaintiff's delivery of water without any ability or opportunity to have any process or procedure to halt the proposed depravation and/or seek its restoration." *Id.* at 3. She further alleged that "[e]nding water services when there is no on-going violations of City Ordinances or lack of payment makes the continued suspension of water services arbitrary and/or capricious, of such a character to shock the consciousness of this Court; and/or is an unreasonable restriction is [sic] without a valid rational basis." *Id.* In Count Two, Johnson alleged that her procedural due process rights were violated. *Id.* at 5–6. Specifically, Defendants did not provide her with notice before they ended her water services, and they did not provide a pre- (or post-) deprivation hearing.

In addition to filing this complaint, Johnson filed a separate complaint alleging due process violations in relation to the City of Saginaw's suspension of her business license. *Johnson v. Morales*, 2017 WL 6512450 (E.D. Mich. Dec. 20, 2017). Defendants in that case filed a motion to dismiss which the Court granted. *Id.*

## II.

Defendants now move for summary judgment and Johnson moves for partial summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

In their motion for summary judgment, Defendants argue that they did not violate Johnson's procedural or substantive due process rights. Defs.' Mot. Summ. J., ECF No. 74. They further argue that Defendants Stemple and Cabello are entitled to qualified immunity and that Johnson's claims are moot. *Id.* In her motion for partial summary judgment, Johnson argues that there is no genuine dispute of material fact as to whether Defendants violated her procedural and substantive due process rights. Mot. Partial Summ. J. at 10, ECF No. 75. As such, she argues that summary judgment, except as to the determination of damages, is warranted. *Id.*

The two motions will be addressed together since the parties' response and reply briefings frequently reference the two motions themselves. The parties' briefings center on the four issues presented: procedural due process, substantive due process, qualified immunity, and mootness. Each will be addressed in turn.

### IV.

Johnson alleges that Defendants violated her procedural due process rights because they terminated her water services without giving her prior notice, a predeprivation hearing, or a postdeprivation hearing. Defendants contend that they were not required to give Johnson notice prior to suspending her water and that she was given a postdeprivation hearing. The lack of notice and a predeprivation hearing will be addressed followed by the issue of whether Defendants provided an adequate postdeprivation hearing.

## A.

"At its essence, due process can be summarized as 'the requirement that a person…be given notice of the case against him and [an] opportunity to meet it." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348–349 (1976)). "Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). *See also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that the "minimum requirements of due process" include both "written notice" and an "opportunity to be heard in person and to present witnesses and documentary evidence").

It is well settled that a pre-deprivation hearing is not always required by due process. *See e.g., United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 486 (6th Cir. 2014). *See also Matthews*, 424 U.S. at 343 (identifying "the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action"). However, "exceptions to the general rule requiring predeprivation notice and hearing" are appropriate only in "'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). Exceptions to the predeprivation hearing requirement include "situations where a government official reasonably believed that immediate action was necessary to eliminate an emergency situation," *United Pet Supply, Inc.*, 768 F.3d at 486, and "situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). And the Supreme Court has held that "[t]he demands of due process do not require

a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." *Opp Cotton Mills v. Adm'r of Wage & Hour Div. of Dep't of Labor*, 312 U.S. 126, 153 (1941).[1]

Defendants did not provide Plaintiff with notice or a predeprivation hearing prior to suspending her water services. Additionally, as explained in the Court's previous order, the notice of Johnson's suspension of her business license does not constitute notice of suspension of her water services. ECF No. 23 at 18–19 ("Johnson has related but distinct property interests in both her business license and the continuation of utilities service. Given the fact that the legal basis for the license suspension (§ 110.06(F)) does not authorize the termination of water services, the notice is clearly inadequate to satisfy due process."). In their motion for summary judgment, Defendants contend that a predeprivation hearing was not necessary and that their actions were permissible under Michigan Building Code 112.3. As explained below, this reasoning is unpersuasive.

### 1.

Defendants rely heavily upon the Sixth Circuit decision of *Harris v. City of Akron* in which the defendant, the City of Akron, razed a building without granting the plaintiff a hearing beforehand. *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994). In its analysis, the court discussed the emergency and non-emergency provisions under a local city code and determined that exercising the code's emergency provision was the city's only option. The court held that

> If an emergency existed, the only available course of action for removing the threat to public health and safety was to carry out the demolition forthwith. Under these circumstances, there was no opportunity for notice and a predeprivation process. An erroneous determination that no emergency existed would have resulted in the very threat to the public that the code was intended to prevent. Thus, if there was

---

[1] The Supreme Court has since adopted a generalized test for determining whether a predeprivation hearing (or other due process requirements) is necessary in a given situation. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). Nevertheless, *Opp Cotton Mills* remains informative.

an actual emergency,…the authorities in this case could remove that emergency only by destroying the building.

*Id.* at 1404. The court further held that "[t]he non-emergency procedure for notifying the owner of a building would not have removed the threat to public safety and health perceived by the responsible officials." *Id.* at 1405.

The case here is distinguishable for three reasons. First, the code that Defendants relied upon, Michigan Building Code §112.3, did not apply in the situation. Section 112.3 provides:

> The building official shall have the authority to authorize disconnection of utility service to the building, structure or system regulated by the code and the referenced codes and standards set forth in Section 101.4 in case of emergency where necessary to eliminate an immediate hazard to life or property or when such utility connection has been made without the approval required by Section 112.1 or 112.2. The building official shall notify the serving utility, and whenever possible the owner or occupant of the building prior to taking such action. If not notified prior to disconnecting, the owner or occupant of the building, structure or service system shall be notified in writing, as soon as practical thereafter.

Mich. Build. Code §112.3. Defendants contend that the shooting outside Johnson's restaurant constituted an emergency pursuant to the statute and accordingly, they had the authority to suspend her water services without notice or a predeprivation hearing. ECF No. 74 at 7. Johnson argues that Section 112.3 cannot be used to justify Defendants' actions because Section 112.3 was intended only to address the construction of buildings. ECF No. 75 at 8, 17.

The Michigan Building Code originates from Michigan Compiled Laws 125.1504 which "prescribes the procedures for the administration and enforcement of the state construction code." *Forner v. Twp. of Spring Lake*, 2018 WL 3551357, *1 (Mich. Ct. App. 2018). It mandates the state of Michigan to promulgate a building code "consisting of rules governing the construction, use, and occupation of buildings and structures…and other requirements relating to the safety, including safety from fire, and sanitation facilities of the buildings and structures." M.C.L.

125.1504(1). The general purposes of the act is to regulate the construction and integrity of buildings. It provides:

> (3) The code shall be designed to effectuate the general purposes of this act and the following objectives and standards:
>
>> (a) To provide standards and requirements for construction and construction materials consistent with nationally recognized standards and requirements.
>>
>> (b) To formulate standards and requirements, to the extent practicable in terms of performance objectives, so as to make adequate performance for the use intended the test of acceptability.
>>
>> (c) To permit to the fullest extent feasible the use of modern technical methods, devices, and improvements, including premanufactured units, consistent with reasonable requirements for the health, safety, and welfare of the occupants and users of buildings and structures.
>>
>> (d) To eliminate restrictive, obsolete, conflicting, or unnecessary construction regulations that tend to increase construction costs unnecessarily or restrict the use of new materials, products, or methods of construction, or provide preferential treatment to types or classes of materials or products or methods of construction.
>>
>> (e) To ensure adequate maintenance of buildings and structures throughout this state and to adequately protect the health, safety, and welfare of the people.

M.C.L. 125.1504(3).

Nowhere does the act state or even suggest that a purpose of the building code is to protect individuals from criminal activity. It does state that the act is intended to "protect the health, safety, and welfare of the people," but this is in relation to the "maintenance of buildings and structures." It would be too far a stretch to conclude that the maintenance of the building extends to preventing criminal activity occurring outside the building. The code permits the suspension of utilities "in case[s] of emergency where necessary to eliminate an immediate hazard to life or property." Mich. Build. Code §112.3. However, this does not encompass any situation that could be considered an emergency within or near the building. Rather, the "emergency" must be in the context of the

maintenance and use of the actual building. To interpret the code otherwise would be to reject its clear intended purpose as described in M.C.L. 125.1504.

Defendants further argue that "this Court has held that the *misapplication* of the Code is not a violation of due process." ECF No. 74 at 19 (emphasis present in original). While this assertion is true, it requires additional context. Plaintiff had filed a motion to amend her complaint a third time to add a claim that Defendants' actions pursuant to Michigan Building Code §112.3 violated her due process rights. Mot. for Leave to File Third Am. Compl., ECF No. 52. The Court held that Section 112.3 was facially constitutional and that misapplication of a state law does not constitute a per se due process violation. ECF No. 70. However, this conclusion did not foreclose the possibility that Defendants still violated Johnson's due process rights while claiming to act pursuant to Section 112.3. The Court was explaining that the misapplication alone of a state law does not constitute a due process violation. Rather, the misapplication must have resulted in a due process violation. Here, the misapplication of Section 112.3 did result in a due process violation.

The second reason *City of Akron* is distinguishable is because the Sixth Circuit determined that the city's only option to address the emergency was to demolish the building. *City of Akron*, 20 F.3d at 1404. The building was structurally unsound and permitting it to remain standing endangered public safety. In this case, Defendants have not demonstrated that suspending Johnson's water services was their only option to prevent another event from occurring at Johnson's premises. It is reasonable to assume that the City of Saginaw could have exercised other options to prevent another event from occurring at the property. In fact, the City exercised such an option when they suspended Johnson's business license. As the Court previously determined in *Johnson v. Morales*, the city had proper statutory authority to suspend her business license without a predeprivation hearing. 2017 WL 6512450 at *13 (E.D. Mich. Dec. 20, 2017). Here, the City

had no such statutory authority to suspend water services. Defendants argue that shutting off the water was necessary because suspension of the business license could not happen until the next day. However, there was nothing preventing the City from exercising other lawful options to address the emergency.

The third reason *City of Akron* is distinguishable from the present case is that it requires adequate postdeprivation proceedings.

> When the situation necessitates "quick action" by the state or makes efforts to provide a meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate postdeprivation procedure.

*City of Akron*, 20 F.3d at 1401. The city of Akron "provided a meaningful postdeprivation process" to the plaintiff. *Id.* 1405. By contrast and as explained below, Defendants did not provide Johnson with a meaningful postdeprivation procedure.

**2.**

Defendants further contend that a predeprivation hearing was not necessary in consideration of *Mathews v. Eldrige*. They argue that the Court must "balance plaintiff's interest in her continued water service against the City of Saginaw's interest in the deprivation under the test set forth in *Matthews* [sic] *v. Eldridge*." ECF No. 74 at 10.[2] *Mathews* requires the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] Johnson contends that the Court does not need to perform a *Mathews* analysis due to *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978). ECF No. 75 at 11. However, *Memphis* involved the suspension of utilities in a non-emergency situation, unlike the situation here. Because the facts differ between the two cases, it would be incorrect to rely exclusively upon the Supreme Court's *Mathews* analysis of the specific facts in *Memphis Light*.

*Mathews*, 424 U.S. 319, 335 (1976).

## a.

In considering the first factor of the private interest, the *Mathews* Court noted several relevant considerations. First, "temporary" deprivations necessarily involve a lesser private interest than "permanent" deprivations. *Id.* at 340. Second, "the degree of potential deprivation that may be created by a particular decision" must be considered. *Id.* at 341. Third, courts should consider "'the possible length of wrongful deprivation.'" *Id.* (quoting *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975)).

There can be no dispute that Johnson was deprived of a property interest when her water service was suspended. "[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess." *Ramsey v. Bd. of Educ. of Whitley Cty., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988). Johnson's means of livelihood is her restaurant which requires water to operate. She testified that without water, she could not clean or sanitize the building. Johnson Dep. at 53, ECF No. 74-2 ("[Y]ou can't flush the toilets, you can't clean the kitchens; so for cleaning purpose, sanitation purpose."). Without water, Johnson was prevented from operating her business, thus depriving her of her primary source of income.

Regarding the finality of the suspension, the Supreme Court has held "[a]lthough utility service may be restored ultimately, the cessation of essential services for any appreciable time works a uniquely final deprivation." *Memphis Light, Gas and Water Division v. Craft*, 98 S. Ct. 1554, 1566 (1978). The City suspended Johnson's water for five months, from May 2017 to October 2017. Defendants argue that it only lasted for five days because Johnson was granted a hearing on May 11. However, as explained below, the business license suspension hearing was not

an adequate hearing on her water suspension. As such, her deprivation was permanent because it was not until October 3, at the request of her attorney, that water services were finally reinstated.

Johnson alleges that she asked the city to turn her water turned back on. Johnson Aff. at ¶33, ECF No. 75-12. Defendants contend that they have no record of her making such a request. ECF No. 74-4 at 26. However, even if Johnson had made no such request, the City turned off the water in response to an alleged emergency. When the emergency was over, the City could have turned the water back on. Defendants argue that they do not turn water back on after emergencies until requested by the property owner to do so. Stemple Dep. at 30, ECF No. 74-4. However, the City unilaterally suspended Johnson's water services with no notice or predeprivation hearing. It had a responsibility to hold a postdeprivation hearing, which it did not do. As the instigator of the water suspension, the onus remained with the City to determine whether it should reinstate Johnson's water services. This was not Johnson's responsibility.

**b.**

The second factor to consider is the risk of an erroneous deprivation and the probable value added by additional safeguards or procedures (like a predeprivation hearing). *Mathews*, 424 U.S. 319, 335 (1976). "[T]he probability of error in utility cutoff decisions is not so insubstantial as to warrant dispensing with all process prior to termination." *Memphis Light*, 98 S. Ct. 1554 at 1566. In this case, the risk of erroneous deprivation is high because no one from the City water department assessed the situation prior to suspending water services. Stemple's decision to suspend Johnson's water services stemmed entirely from Chief Ruth's suspicions that the shooting was gang-related. Stemple Dep. at 9, 50, ECF No. 74-4. Water services were not suspended due to an emergency involving the actual water or its delivery to the building. Rather, they were suspended due to an outside occurrence. As established above, the City was acting without

statutory authority when it suspended water services. As such, the "risk of erroneous deprivation" was high because no one from the City Water Department assessed or inspected the situation. It was based entirely on a report from law enforcement involving an act of violence that was potentially related to an event occurring at the property. It was not related to water services.

**c.**

The third factor to consider is the Government's interest in the deprivation. *Mathews*, 424 U.S. 319, 335 (1976). The City of Saginaw has a strong interest both in preventing shootings at local establishments and in prosecuting the perpetrators of such shootings. And, given the serious threat posed by mass shootings, the City has a strong interest in taking steps to prevent further violence before it occurs. However, the Government's interest is only one of three factors in the *Mathews* balancing test. It may not swallow the other two factors whole. Though the prevention of crime is an important government interest, this does not give the government license to disregard individuals' Constitutional rights. Given the strong weight of the first two factors, the *Mathews* balancing test does not excuse the City's obligation to provide notice and a hearing prior to suspending Johnson's water services.

**B.**

Johnson contends that the City of Saginaw never provided her a postdeprivation hearing after suspending her water services. ECF No. 39 at 6. Defendants disagree and argue that she received a postdeprivation hearing on May 11, 2011 when the City held a hearing about suspending her business license. ECF No. 74 at 12–13. The notice of the hearing given to Johnson provided

> PLEASE BE ADVISED THAT PURSUANT TO THE CITY OF SAGINAW ("CITY") CODE OF ORDINANCE, **ALL ACTIVITY** RELATED TO THE USE AND/OR OPERATION OF THE PROPERTY LOCATED AT 110 N. WASHINGTON AVENUE SAGINAW MI 48601, ALSO KNOWN AS "RITA'S SOUTHERN SOUL CAFÉ" (ESTABLISHMENT") IS HEREBY SUSPENDED, **EFFECTIVE MAY 8, 2017**.

Notice of Suspension, ECF No. 74-8. (bold and underline present in original). Defendants acknowledged that the hearing was scheduled and held pursuant to §110.06(F), the provision which empowers the City Manager to immediately suspend a license if a hearing on that suspension is held within five days. Def.'s M. Dismiss at 8, ECF No. 7. As the Court previously found, §110.06(F) does not authorize termination of water services. ECF No. 23 at 19. The hearing was held expressly to provide Johnson an opportunity to challenge the license suspension, not suspension of her water services. Defendants argue that regardless, suspension of Johnson's water services was addressed at the hearing because the notice stated that "all activity" related to the property was suspended. However, the Court has previously determined that "Johnson has related but distinct property interests in both her business license and the continuation of utilities service." ECF No. 23 at 18–19. The notice's phrase "all activity" does not subsume every activity at the property when the ordinance §110.06(F) only authorized termination of Johnson's business license.

Defendants identify one statement made by Johnson during the hearing which they argue proves that an adequate hearing was provided. ECF No. 74 at 13. Johnson stated:

> "My water's off. I don't know why. Maybe somebody here can tell me. I have no idea. I go into my building, my water bill's paid, but the water's off. So I don't know if that's the way of helping to shut me down."

Hearing Transcript at 101, ECF No. 74-3. Johnson made this remark as part of her closing statement, not in the context of a discussion about her water services. *Id.* at 99–101. In all 109 pages of the hearing transcript, Johnson's statement is the only mention of the water suspension. At no time did the City address this issue. Johnson's passing remark about her water did not give her a meaningful opportunity to be heard on the issue of her water suspension and to have it addressed.

Furthermore, a brief mention of water services cannot be considered adequate when it is considered in the context of Defendants' actions. Defendants suspended Johnson's water services without notice or a predeprivation hearing. In order to be considered adequate and legitimate, the postdeprivation hearing would need to be especially robust because a fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). A brief remark by Johnson that her water was shut off does not constitute a meaningful consideration of the issue.

Defendants contend that their notice and hearing were not vague because the Court previously held in *Johnson v. Morales* that the city ordinance §110.06(F) was not vague. ECF No. 74 at 13. However, Johnson is not challenging the vagueness of any ordinance in relation to suspension of her water rights. Rather, she is challenging the fact that the City provided no notice, no predeprivation hearing, and no postdeprivation hearing in relation to suspension of her water rights. The authority cited by Defendants do not address the issue of what constitutes vagueness in a notice or hearing proceeding. Defendants arguments are irrelevant to Johnson's claims.

**V.**

Defendants argue that Johnson's claims of substantive due process violations should be dismissed because their actions were not arbitrary or capricious. ECF No. 18 at 5. In *Pearson v. City of Grand Blanc*, the Sixth Circuit categorized potential substantive due process claims in the administrative proceeding context. 961 F.2d 1211, 1216 (6th Cir. 1992). "Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the strict sense, meaning 'that there is no rational basis

for the…[administrative] decision.'" *Id.* (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)). Essentially, "[t]he administrative action will withstand substantive due process attack unless it 'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Id.* (quoting *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir.1975)).

As established in the Court's previous order, Johnson has a constitutionally protected property interest in the use of utilities at her place of business. Order Denying Mot. to Remand, ECF No. 23 at 11–12. It is true that, in proving a violation of substantive due process, the plaintiff must demonstrate that she "has a constitutionally protected property or liberty interest" which was infringed upon. *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005). "It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due process clause." *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993). *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (finding that customers have a constitutionally protected property interest in the continuation of their residential utility services). "[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess." *Ramsey v. Bd. of Educ. of Whitley Cty., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988). *See also Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 164 (6th Cir. 1973) (quoting *Wood v. City of Auburn*, 87 Me. 287, 32 A. 906, 908 (1895) ("The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer, once taken on to the system, becomes dependent on that system for a prime necessity of *business*, comfort, health, and even life.") (emphasis added)).

When administrative officials are exercising statutorily-given discretion, their decision can almost never be considered arbitrary or capricious. *See Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995); *Stewart v. City of Lansing*, No. 1:08-CV-778, 2009 WL 910810, at *3 (W.D. Mich. Apr. 2, 2009). Substantive due process requires a "rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Richardson v. Twp. of Brady*, 218 F.3d 508, 513 (6th Cir. 2000). Where the terms of the ordinance do not permit the action taken, the action is not rationally related to the terms of the ordinance. *See also Layman Lessons, Inc. v. City of Millersville, Tenn.*, 636 F. Supp. 2d 620, 652 (M.D. Tenn. 2008) ("[I]t was neither rational nor professional to make a zoning decision without actually verifying that the ordinance in question actually applied to the Property at issue.").

Defendants argue that the City's decision to discontinue water services was not arbitrary and capricious because there was a rational basis for the decision. According to the City, "water service was suspended following heinous acts of violence attracted by Plaintiff's business…[S]uspending Plaintiff's water service was necessary to prevent further accost to the health, welfare and morals of the citizens of Saginaw until an investigation was complete." Mot. Summ. J. at 7, ECF No. 74. Suspending Johnson's water services was the most "necessary and immediate action to ensure that no further violence stemming from Plaintiff's business activity could occur. Without suspension of Plaintiff's water, another party could have occurred at Plaintiff's business the following night and again later that week." *Id.*

Defendant's identify Michigan Building Code §112.3 as granting them statutory authority to suspend water services in emergency situations. As explained above, this code addresses the integrity and maintenance of buildings, not criminal acts occurring outside the building. Thus, Defendants were acting without statutory authority when they suspended water services. This is

consistent with the Court's ruling in *Johnson v. Morales* in which the Court determined that the City of Saginaw had a rational basis for suspending Johnson's business license pursuant to the city ordinance §110.06(F). Defendants have not identified a similar statute providing them this type of authority.

Furthermore, as stated in the Court's previous order, Defendants' purported reason for terminating water services is of questionable legitimacy. Defendants' desire to suspend business operations at Johnson's business because they feared future violent incidents and wanted to complete an investigation bears a rational relation to a legitimate government purpose. But that purpose was completely accomplished by terminating Johnson's business license. Defendants have not explained why public safety demanded both that Johnson's business license be suspended and her water services terminated during the length of the investigation. They contend that they had to suspend the water because they could not revoke her business license until the next day. However, they do not explain why Johnson's water services remained turned off even after the City suspended her business license. The utter redundancy of the decision to discontinue water services suggests that it was "'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Pearson*, 961 F.2d at 1221 (quoting *Greenhill*, 519 F.2d at 10 n. 12)).

Defendants further argue that suspending Johnson's water services was rational because it was consistent with the city's custom and past practices. Defendant Stemple testified that suspending water services in response to emergencies is a common practice in the city of Saginaw. Stemple Dep. at 20–22, ECF No. 74-4. Defendants cite to *Regents of University of Michigan v. Ewing* to support their proposition that consistency with past practice demonstrates a lack of arbitrariness. ECF No. 74 at 6 ("Defendants, therefore, bear the burden of establishing that the

conduct was rationally related to a legitimate government purpose, and that the conduct was not a departure from accepted norms and professional judgment.").

However, Defendants have not established that they acted consistently with accepted norms and professional judgment. In *Regents of University of Michigan*, the plaintiff was a medical student who claimed that the defendant, the University of Michigan, violated his due process rights by dismissing him from an academic program after the plaintiff failed an examination. *Regents of University of Michigan v. Ewing*, 106 S.Ct. 507 (1985). Among other issues, the Court considered whether the university had acted according to "accepted academic norms." The Court did not confine its analysis to just the university's past practice. In fact, the Court only referred to the university's past practice once, when framing the issue before the Court. *Regents of Univ. of Mich. v. Ewing*, 747 U.S. 214, 215 (1985) ("The question presented is whether the University's action deprived Ewing of property without due process of law because its refusal to allow him to retake the examination was an arbitrary departure from the University's past practice."). Though the Court uses the term "arbitrary" to describe the claim that the university had acted inconsistently with past practice, the Court was not creating a standard whereby arbitrariness is determined by a defendant acting consistently or inconsistently with its past behavior. To do so would overlook the fact that a custom and past practice may be irrational or unreasonable. A defendant may act consistently in certain situations (such as suspending water services in cases of emergency), but such consistency does not legitimize the action.

Defendants attempt to use the term "arbitrary" in its colloquial sense as an action that is inconsistent with past behavior. However, the term has a different meaning when used in the context of the "arbitrary and capricious" standard. In this context, the Sixth Circuit has established

the "arbitrary and capricious" standard to mean "that there is no rational basis for the…decision." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1995).

<h2 style="text-align:center">VI.</h2>

Defendants argue that Defendants Stemple and Cabello are entitled to qualified immunity and that consequently, Defendant City of Saginaw is also immune from suit. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The existence of qualified immunity turns on the question of whether a defendant's action violated clearly established law. *Id*. at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id*. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614, (1999). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. Al-Kidd* 131 S. Ct. 2074 (2011)).

Defendants contend that *Harris v. City of Akron* and the Michigan Building Code provide sufficient justification for a reasonable employee to have acted as Stemple and Cabello did. *See* ECF No. 78 at 5. As established above however, neither of these authorities would grant an employee the authority to suspend water services in this case. *Harris* is distinguishable for many

reasons and the Michigan Building Code does not address emergencies involving criminal activities. *See* Section IV.A.1. Construing *Harris* and the Code as permitting an employee to suspend utilities for any situation that could be construed as an emergency falls outside of any legal authority. This is especially true in consideration of established authority requiring due process in relation to the termination of utility services. *See Memphis Light*, 98 S. Ct. 1554. As such, Stemple and Cabella do not have qualified immunity.

Johnson's motion for summary judgment against the City of Saginaw will not be granted because a plaintiff may not recover against a municipality on a Section 1983 claim on a theory of *respondeat superior. Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, if a party wishes to hold a municipality liable, it must prove that the municipality adopted a policy or custom that violated the plaintiff's constitutional rights. *Id.* at 690–691. Johnson's second amended complaint does not set forth the necessary allegations for a *Monell* claim. Her complaint only makes allegations related to the single incident in which the City suspended her water services. *See* Second Amend. Compl., ECF No. 39. Nowhere in the amended complaint does it allege that the City had a policy, practice, or procedure of suspending water services without due process. *Id.* Johnson first raises such an argument in her motion for partial summary judgment. Pl.'s Mot. for Partial Summ. J. at 19–22, ECF No. 75. An argument raised in a motion for summary judgment is not a pleading.

However, Johnson's claim against the City of Saginaw will not be dismissed. Defendants have not sought for its dismissal for failure to state a claim. Instead, they only allude to this argument in their response to Johnson's motion for partial summary judgment. ECF No. 79 at 18–19. Federal Rule of Civil Procedure 12(h)(2) provides:

Failure to state a claim upon which relief can be granted…may be raised:

(A) In any pleading allowed or ordered under Rule 7(a);

(B) By a motion under Rule 12(c); or

(C) At trial.

Fed. R. Civ. Pr. 12(h)(2). Defendants have not sought dismissal of Johnson's claim for failure to state a claim in a pleading, by a motion, or at trial. Instead, they first address the issue in their response to Johnson's motion for partial summary judgment. ECF No. 79 at 18–19. They have not filed a motion to dismiss for failure to state a claim nor did they include such an argument in their motion for summary judgment. Accordingly, Defendant's motion for summary judgment will be denied.

## VII.

Defendants argue that Johnson's claims are moot because the City restored her water services. ECF No. 74 at 18. However, the Supreme Court has held that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Instead, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).

Defendants have not met this burden because it is likely that the wrongful behavior will recur. Both Stemple and Gough testified that it is the City's practice to suspend water services with no notice or hearing. Stemple Dep. at 22, ECF No. 75-11; Gough Dep. at 9, ECF No. 75-10. Stemple acknowledged that were the same situation to occur again at Johnson's restaurant, he would again suspend her water services. ECF No. 74-4 at 32. Furthermore, the City in its motion for summary judgment concedes that it has suspended water to "over a dozen businesses" and that

it is a practice of the City to do so. Defs.' Mot. Summ. J. at 8, ECF No. 74. As such, Johnson's claim is not moot because it is reasonable to expect that the City will continue in its current pattern of behavior.

**VIII.**

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment, ECF No. 74, is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for partial summary judgment, ECF No. 75, is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that Plaintiff is **GRANTED** partial summary judgment against Defendants Cabello and Stemple and is **DENIED** partial summary judgment against Defendant City of Saginaw.

Dated: February 6, 2019                                    s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge